Filed 7/28/16  P. v. Sanders CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID ARON SANDERS,<br><br>        Defendant and Appellant. | A146346<br><br>(Sonoma County<br>Super. Ct. No. SCR-641240) |

Defendant David Aron Sanders appeals from the court's order revoking his probation and imposing a three-year prison sentence.  Defendant was previously convicted after a jury trial for the unlawful possession of marijuana with the intent to sell (Health & Saf. Code, § 11359), allowing a place for preparing or storing a controlled substance (*id*., § 11366.5, subd. (a)), and the unlawful transportation of marijuana (*id*., § 11360, subd. (a)).[1]

Defendant's court-appointed counsel has filed a brief that does not raise any legal issues.  He requests this court independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Defendant was informed of his right to file a supplemental brief and has not done so.  Upon our independent review of the record pursuant to *Wende*, we conclude there are no arguable appellate issues for our consideration and affirm the trial court's order.

---

[1] In an unpublished opinion issued on July 21, 2016, in case number A144585, we affirmed defendant's convictions.

1

## BACKGROUND

After defendant was convicted of the subject crimes, the court placed him on probation for 48 months, with one condition being his completion of a residential drug rehabilitation program. On February 10, 2015, the Sonoma County Department of Health Services reported to the court that defendant, having "admitted to having a substance use disorder and . . . express[ing] a desire for rehabilitation," was accepted for participation in the Treatment Alternatives for Safer Communities (TASC) program and placed on a wait list to begin a six-month residential treatment program. On June 8, 2015, he was released from custody and transported to TASC to begin this program. However, on June 26, 2015, he left TASC prior to completing the program and without approval. The court revoked his probation and issued a warrant for his arrest. Defendant was arrested on July 16, 2015, apparently when he turned himself in at the local jail.

At an August 27, 2015 probation revocation hearing, defendant told the court he left TASC to take his mother to the hospital, and that he turned himself in the day after she got out of the hospital. He said he tried to convince TASC to let him go, but "it wasn't going to happen, so I just felt that's what I had to do." The prosecution, however, contested these facts. It asserted defendant left the program after only two and a half weeks, did not notify anyone that he left, was arrested for a battery and then was back in custody for his violation of probation later. In light of this dispute, the court put the matter over for sentencing and asked the probation department to prepare a report.

The probation department subsequently reported that after defendant left TASC, but before his arrest, he participated in two podcasts: "[D]efendant advised that he was disillusioned with the United States government and the circumstances that led him to be in residential treatment. While in treatment, he prayed about whether or not he should leave the program and asked that 'God show him in sign.' He was given money to purchase a plane ticket and took this as a sign to leave the program. He was planning on going to 'the EU.' He stated he had a European passport and he would be able to work in Europe, having a successful life while remaining free from the jurisdiction of the United States. During the podcast, the facilitator brought up the defendant's family and the fact

2

the defendant would not be able to see them if he was a fugitive. The facilitator talked specifically about the defendant's mother and how she would miss the defendant and would miss watching his potential successes and meeting potential grandchildren. . . . [T]he defendant did not mention a need to be with his mother due to an illness. . . . He wanted to experience life while he was young enough to appreciate it and he did not believe he could do this if he returned to custody."

The probation department subsequently interviewed defendant. He said that he did not have a drug problem and for medicinal purposes used only marijuana. He said he was not in need of substance abuse treatment and that "his only need is to be released so that he can be with his mother who is 'failing due to cancer.' " The interviewer asked defendant why he did not mention his mother's illness as a reason for leaving treatment when he participated in a podcast about his having done so prior to his July 2015 arrest. Defendant, after asking the interviewer how he knew about the podcast, said his statements on it were " 'theatrical.' " At that point, he decided it would be best to submit the rest of his statement in a letter to the court, which letter he had indicated he would prepare at the beginning of his interview. The interview was then terminated.

The probation department report had attached to it a handwritten letter, apparently written by defendant's mother. She was supportive of defendant and indicated that she suffered from a significant illness.

The probation department's evaluation recounted some of Sanders' history, including that he had a bachelor's degree from Sonoma State University and had become involved with a drug dealer in growing and harvesting marijuana. He initially excused his actions as the product of an excessive daily consumption of marijuana, resulting in the grant of probation and placement in a residential treatment program. Regarding his podcast and interview comments, the department wrote, "While we do not refute the dire nature of his mother's health condition, it is the defendant's use of her condition which is troubling. He excuses and manipulates information to maintain a lifestyle not conducive to rehabilitation and community advancement. He may believe his youth will be squandered while incarcerated, but it may only curtail his narcissistic tendencies and

3

press upon him to view his actions through a realistic lens. [Defendant] does not wish to participate on a grant of probation, nor does he acknowledge the presence of a problem. . . . In conclusion, rehabilitation requires a desire to change and the recognition of a problem. The defendant fails to recognize either and is adamant in his desire to avoid any accountability based on government standards." Therefore, the department recommended that defendant be committed to Sonoma County Jail for a total term of two years and eight months and pay a restitution fine.

At the resumption of the probation revocation hearing on September 17, 2015, the prosecution reported that the battery case was not going to be prosecuted and saw no reason for the court to review the report on the arrest. The prosecution asked the court to follow the probation department's recommendation because, in light of defendant's conduct and statements, "the only way to hold him accountable is to have him locked up."

Defense counsel agreed that the court should terminate probation and impose a prison sentence, but asked for a split sentence (meaning 10 to 12 months in custody and the rest on mandatory supervision), urging the court to consider that defendant's "primary consideration" in leaving TASC was to help his mother, rather than "thumbing his nose at the system." Counsel further argued that because this was "a cannabis crime" it was "hardly at the top of public safety." Defendant also addressed the court, stating that he had learned and matured a lot while in custody and that he accepted total responsibility for his actions.

The court found that defendant was continuing to make a "real unfortunate set of decisions" for whatever reasons, eliminating the possibility of probation. It found his crime to be one that was "very sophisticated and aggravated, selling of marijuana," that the crime involved an unusually large amount of marijuana, and that defendant had engaged in "a lot of manipulation" beyond the podcasts reported by the probation department. After weighing favorable factors and factors in aggravation, the court concluded they counterbalanced each other. It sentenced defendant, pursuant to Penal Code section 1170, subdivision (h), to three years for his transportation of marijuana

4

conviction, and imposed and stayed pursuant to Penal Code section 654 two-year concurrent sentences for defendant's possession of marijuana for sale and renting and allowing a place for preparing or storing a controlled substance convictions. The court ordered defendant to serve 33 months in local custody and then three months on mandatory supervision, during which time he was to receive and complete programs and services targeting risk factors as directed by the probation department and jail personnel, and be subject to certain conditions. Defendant was awarded 423 days of sentence credits consisting of 203 actual days, 202 days of earned credits and 18 days of actual credit for time at the Turning Point residential treatment program. Standard fees and fines were imposed.

On September 22, 2015, appellant filed a timely notice of appeal.

## DISCUSSION

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] ' "When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. [Citations.] 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' " (*People v. Urke* (2011) 197 Cal.App.4th 766, 772, fn. omitted.)

"We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.' " (*People v. Urke*, *supra*, 197 Cal.App.4th at p. 773.)

The court sentenced defendant to a three-year term in local custody for violation of Health and Safety Code section 11360, for the unlawful transportation of marijuana.

5

This is a crime to be punished by imprisonment for a term of two, three or four years, and pursuant to Penal Code section 1170, subdivision (h). (Health & Saf. Code, § 11360, subd. (a).) Penal Code section 1170, subdivision (h)(2) states that, except for circumstances not present here, "a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense." Furthermore, pursuant to Penal Code section 1170, subdivision (h)(5), a court, unless it finds in the interests of justice that it is not appropriate in a particular case, "shall suspend execution of a concluding portion of the term for the period selected at the court's discretion" under subdivision (h)(2), known as "mandatory supervision." (Pen. Code, § 1170, subd. (h)(5)(A), (B).)

The court provided a well-reasoned analysis for its decision to revoke defendant's probation and sentence him to a three-year term for his unlawful transportation of marijuana, including three months of mandatory supervision with services to address his risk factors. We see no reason in the record to disagree with the court's decisions, its calculation of credits, its mandatory supervision conditions, or its imposition of standard fees and fines. In short, we conclude based on our independent review pursuant to *Wende* that there are no arguable appellate issues for our consideration.

## DISPOSITION

The order appealed from is affirmed.

_____
STEWART, J.

We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.


*People v. Sanders* (A146346)